521 A.2d 1271

Anna M. ROYNON

v.

JANET'S CLEANING SERVICE, et al.

No. 872, Sept. Term, 1986.

Court of Special Appeals of Maryland.

March 9, 1987.

Steven Weinberg (Isicson, Steinmetz & Weinberg, on the brief) Washington, D.C., for appellant.

William N. White (Kathryn G. Troch, on the brief) Towson, for appellees.

Argued before WILNER, WEANT and BLOOM, JJ.

BLOOM, Judge.

This worker's compensation case involves an unusual situation in which the jurisdiction of the Maryland Workmen's Compensation Commission (Commission) over a claim for compensation for an injury sustained by a worker in Maryland is dependent upon an interpretation of the Workmen's Compensation Act of a sister state. The Commission ruled that it lacked jurisdiction to make an award of compensation to appellant, Anna M. Roynon, and the Circuit Court for Montgomery County affirmed the Commission. In her appeal to this Court, Ms. Roynon presents the following issue:

> Whether a Virginia resident, injured in Maryland while working for a Virginia employer under an employment contract entered into in Virginia, is eligible for benefits under the Maryland Workmen's Compensation Act?

Our answer to that question is in the affirmative; therefore, we will reverse the judgment of the circuit court.

*Facts*

Appellant and Janet Baber, the proprietress of Janet's Cleaning Service, appellee, are both residents of Virginia. The contract of employment by which appellant was hired by appellee to perform cleaning services throughout the metropolitan District of Columbia area was made in Virginia. On 6 May 1983 appellant was working in Silver Spring, Maryland, cleaning vacant apartments, when she was assaulted and injured by a co-worker. Three months later, appellant filed a claim for compensation with the Workmen's Compensation Commission of Maryland. The Commission issued an order awarding benefits but subsequently granted appellee's motion for reconsideration and then issued a new order rescinding the prior award. The final Commission order was based upon its determination that it had no jurisdiction over appellant's claim. On appeal to it, the Circuit Court for Montgomery County affirmed the Commission's decision, whereupon the employee noted this appeal.

*Provisions of the Maryland Workmen's Compensation Act Exempting Certain Employers and Employees from the Act*

Md.Code Ann. art. 101, § 21(c)(4) (1985 Repl. Vol.), exempts from coverage under the Workmen's Compensation Act of this state nonresident employers and employees while temporarily or intermittently in Maryland if certain conditions are met. It provides in pertinent part:

An employee and his employer who are not residents of this State and whose contract of hire is entered into in another state shall be exempted from the provisions of this article while such employee is temporarily or intermittently within this State doing work for such nonresident employer, if such employer has furnished workmen's compensation insurance coverage under the workmen's compensation or similar laws of such other state, so as to cover such employee's employment while in this State; provided the extraterritorial provisions of this article are

recognized in such other state and provided employers and employees who are covered in this State are likewise exempted from the application of the workmen's compensation or similar laws of such other state.

There is no dispute about most of those conditions. Both employer and employee are residents of Virginia; the employment agreement was made in Virginia; the employee was injured while only temporarily in Maryland; and the employer furnished worker's compensation insurance covering her employees while working in Maryland as well as Virginia.

■■■ With respect to the provision concerning recognition of extraterritoriality, the statute is not a model of clarity. Art. 101 does have extraterritorial effect in that injuries sustained by a Maryland employee outside the state (unless the employee was hired or is regularly employed outside the state) will be compensable under the Maryland Act. The purpose of the reciprocal exemption provisions of the Workmen's Compensation Acts of Maryland and the several other states which have adopted similar statutory language [1] is to recognize the dominant interest of the "home state" of the injured workman in exercising worker's compensation jurisdiction by yielding the jurisdiction of the state of injury. *See* F. Storke and D. Sears, *Reciprocal Exemption Provisions of Workmen's Compensation Acts,* 67 Yale Law Journal 982.[2] Essential to relinquishment of jurisdiction by the state in which the injury occurred is the existence in the compensation law of the "home state" (state of domicile) of the injured worker of similar extrater-

---

1. *E.g.,* Cal.Labor Code § 3600.5 (West 1971); Colo.Rev.Stat. § 8–46–202 (1986 Repl.Vol.); Miss.Code Ann. § 71–3–109(3) (1972); Nev.Rev. Stat. § 616.260 (1986); N.D.Cert.Code § 65–08–02 (1985 Repl.Vol.); R.I.Gen.Laws § 28–29–15 (1986); Utah Code Ann. § 35–1–55 (1974 Repl.Vol.); Wyo.Stat. § 27–12–306 (1977).

2. For a discussion of the reasons, principally economic, for yielding jurisdiction to the state having the most significant interest in the injured employee, *see* Comment, 44 Calif.L.R. 387, 390–91 (1956).

ritoriality. *Id.* In other words, Maryland will not exempt a sister state's employee from the operation of the Maryland Workmen's Compensation Act with reference to an injury sustained in Maryland unless that injured employee would be covered by the Workmen's Compensation Act of his own state. Here, since the reciprocal extraterritorial provision of the Virginia Workmen's Compensation Act (Virginia Code § 65.1–61 (1980 Repl. Vol.)) is comparable in scope and effect to that of the Maryland Act, the requirement of reciprocal extraterritoriality of the compensation law of the employee's "home state" is met.

But the mutual exercise of extraterritoriality, although central to the purpose of the exemption provisions, does not meet the requirement of mutual recognition by sister states of the extraterritorial effect of each other's compensation laws. Article 101, § 21(c)(4) provides that employers and employees from a sister state are exempt from the Maryland Act "provided the extraterritorial provisions of this article are recognized in such other state and provided employers and employees who are covered in this State are likewise exempted from the application of the workmen's compensation or similar laws of such other state." At first glance it would appear that this language sets forth two separate conditions: (1) recognition by the sister state of the extraterritorial effects of the Maryland statute, and (2) reciprocity of exemption.

■ Upon analysis, however, we see that in reality the quoted language establishes but a single condition. There would appear to be only one way that State A can afford recognition to the extraterritorial effects of State B's compensation laws, and that is by exempting the citizens of State B from the requirements of the compensation laws of State A. Maryland will exempt from the operation of its Workmen's Compensation Act citizens of Virginia injured in Maryland only if Virginia, by exempting from its compensation laws Maryland workers injured in Virginia, would

recognize Maryland's right to apply the Maryland Workmen's Compensation Act to its own citizens.

Language almost identical to that of § 21(c)(4) of the Maryland Act is contained in § 71–3–109(3) of the Workmen's Compensation Act of Mississippi. In *La Dew v. La Borde*, 216 Miss. 598, 63 So.2d 56 (1953), the Supreme Court of that state held that a Louisiana employee injured in Mississippi was entitled to the benefits of the Mississippi compensation law despite the exemption provisions of § 71–3–109(3) (then § 49(c)) thereof. The Court's discussion of extraterritoriality or availability of Louisiana's compensation law to the worker and the reciprocal exemption and recognition of extraterritoriality language of the Mississippi statute reflects the interrelationship between those concepts. Dealing first with the matter of mutuality of extension or extraterritoriality, the Court, after noting that coverage under the Louisiana Compensation Act was questionable, said:

> We think it was the purpose and intent of our legislature to exempt employers and employees from the coverage of the act, by Sec. 49(c), *only* when it is clearly shown that the employee will have an available remedy for his injury under the similar statute of another state. It will not suffice to show that he may possibly, or even probably, have such relief there.

63 So.2d 58 (emphasis in original). Then, with respect to the reciprocity of exemption language of the Mississippi Act, the Court added:

> But, whether or not appellants could be said, on this record, to have shown that appellee would have a remedy in Louisiana under the compensation statute of that state, there is another and more potent reason why the Mississippi statute applies in this case, notwithstanding Sec. 49(c). We have been unable to find any provision in the Louisiana Act whereby that state recognizes the extraterritorial provisions of Chap. 354, Laws of 1948, and

exempts employers and employees who are covered in this state.

*Id.* at 58–59.

### The Virginia Compensation Act

Having already satisfied ourselves that there are extraterritoriality provisions in the Workmen's Compensation Act of Virginia that extend the benefits of that Act to employees injured outside of Virginia, we turn now to the question of whether Virginia affords Maryland employers and employees an exemption from the Virginia Act equivalent to the reciprocal exemptions available to nonresidents under the Maryland Act.

The circuit court determined, as did the Commission, that Virginia does grant such an exemption. That determination, however, was not based on any language to be found in the Virginia Act, since that statute provides no exemptions based on nonresidence. The court (and presumably the Commission) concluded that the Supreme Court of Virginia had established judicially a nonresident exemption from the Virginia Workmen's Compensation Act in *Solomon v. Call,* 159 Va. 625, 166 S.E. 467 (1932). It is with that conclusion that we disagree.

The fact that the exemption found by the court is not in the Virginia Workmen's Compensation Act presents the first problem with the court's ruling. The Maryland Act exempts nonresident employers and employees only if "employers and employees who are covered in this State are *likewise* exempted from the application of the workmen's compensation or similar laws of such other state." § 21(c)(4) (emphasis added). It is generally recognized that provisions of statutes similar to Maryland's requiring reciprocity of extension, *i.e.,* provisions of extraterritoriality, do not mean that the extension provisions must be in the compensation act itself, and that a state may make its act

applicable to injuries suffered beyond its borders by other legislation or by judicial interpretation. *See* F. Storke and D. Sears, *Reciprocal Exemption Provisions of Workmen's Compensation Acts, supra,* at 993. That principle, however, does not necessarily extend to the "likewise exempted" requirement. If, as used in § 21(c)(4), "likewise" means "in a similar manner," statutory exemption would seem to be required; but if it merely means "to the same extent," a judicially created exemption that is coextensive with the statutory exemption in § 21(c)(4) would suffice.

■ We need not address that particular problem, however, because Virginia's exemption does not meet the objectives of § 21(c)(4) in either event. If "likewise exempted" in § 21(c)(4) means exempted by the statute, the Virginia statute obviously does not meet that test. If, on the other hand, it means "exempted to the same extent," so that we may look beyond the statute (here, to Virginia case law) for the exemption, this ultimate proviso in § 21(c)(4) still has not been met. Our analysis of *Solomon v. Call, supra,* the single judicial decision relied upon by appellee, the Commission, and the court to supply the required reciprocal exemption coextensive with the Maryland statutory exemption, persuades us that it fails to meet the "likewise" or "to the same extent" test.

At issue in *Solomon* was the right of a Pennsylvania resident, who was injured in a motor vehicle accident in Virginia while acting in the course of his duties as a salesman pursuant to a Pennsylvania employment contract, to bring a third party action in Virginia after obtaining a Workmen's Compensation award in Pennsylvania. The Virginia Workmen's Compensation Act proscribed third party actions; therefore, if the plaintiff were subject to that Act he would be precluded from maintaining his action. The Court held that the Virginia Compensation Act did not apply because:

The plaintiff's employment was under a Pennsylvania contract, with a Pennsylvania employer and embraced within the terms of the Workmen's Compensation Act of that State. His contract of employment was entirely foreign to the state of Virginia and clearly outside of the Virginia Workmen's Compensation Act (Code 1930, § 1887(1), *et seq.*).

*Id.* 166 S.E. at 468.

Although factually somewhat similar to the case *sub judice, Solomon* does not clearly answer the legal question presented in this appeal. From *Solomon* we learn only that 55 years ago the Supreme Court of Virginia exempted a nonresident employee from that state's workmen's compensation laws when his contract of employment was "entirely foreign" to Virginia. That proposition is not easily measured against the requirement of reciprocity contained in § 21(c)(4) because the concept of an "entirely foreign" contract is not contained in the Maryland Act and the Court in *Solomon* did not identify the specific characteristics that rendered the contract "entirely foreign." In the absence of a clear definition of that term, there may be a variety of circumstances in which the Virginia exemption is not coextensive with that provided nonresidents under the Maryland Act.

The employee and employer in *Solomon* were nonresidents of Virginia, their employment agreement was formed outside that state, and there appeared to be no connection between Virginia and the employer, the employee or the employment. To the extent those factors rendered the contract of employment "entirely foreign," *Solomon* is consistent with § 21(c)(4). *Solomon,* however, does not reveal whether the plaintiff therein was merely passing through Virginia on his way to a sales destination outside that state or was actually pursuing Virginia business when he was injured. We are left to surmise, therefore, whether Virginia would deem *entirely* foreign a contract between a

Maryland employer and Maryland employee that called for the performance of cleaning services in Virginia on an intermittent basis. We cannot tell what if any connection between Virginia and either the employer or employee might have produced a different result in *Solomon.*

Appellant has directed to our attention two federal diversity cases involving Virginia workmen's compensation laws in which *Solomon* was distinguished and the Virginia Act was held to apply to nonresidents. In *McCann v. Newport News Shipbuilding and Dry Dock Co.*, 177 F.Supp. 909 (E.D.Va.1959), the nonresident plaintiff, an employee of a New Jersey manufacturing company, was injured in Virginia while supervising the installation of a compressor sold by his employer to the defendant. The injured workman's suit against the buyer was dismissed on the basis that under Virginia's Act the defendant was the plaintiff's statutory employer and therefore immune from suit. The Court reasoned that the absence of any reference to the status of nonresidents in the Virginia Act is indicative of legislative intent to grant the same remedies to, and impose the same restrictions and limitations on nonresidents and residents alike. *Id.* at 913. *Solomon* was distinguished on the basis that the tort-feasor in that case was a "stranger" to the plaintiff's employer and there was no Virginia employer from whom benefits under the Virginia Act could be obtained. *Id.* The Virginia Act was deemed applicable to *McCann* because there was a substantial nexus between Virginia and the *employment.*

*Solomon* was also distinguished in *Wilson v. Fraser*, 353 F.Supp. 1 (D.Md.1973). There, two Maryland employees of Sears, Roebuck & Company were killed in Virginia while traveling home to Maryland from a business dinner. The estate of the passenger filed a wrongful death action against the estate of the driver. It was the defendant's contention that under *lex loci delicti* Virginia law controlled the viability of the action and that Virginia workmen's

compensation law bars wrongful death actions against fellow servants. Finding no statutory or case law provision to the contrary, the Court held that "in keeping with the remedial nature of workmen's compensation laws and the general liberality which attends their construction," the Virginia Act would cover those nonresidents who were killed in Virginia. *Id.* at 6. In rejecting the argument that *Solomon* required a different conclusion, the Court said:

> The court rejects such a reading [of *Solomon* ], however, for several reasons notably among which are that the case was decided in 1932, the employer appears only to have been located in Pennsylvania and no qualification with the Virginia Industrial Commission appears to have been made by the employer.

*Id.* Thus, in *Wilson* the Virginia Act was deemed applicable because there was a significant nexus between Virginia and the *employer.*

We fully recognize that *McCann* and *Wilson* are merely persuasive and not controlling interpretations of Virginia law. We cannot ignore, however, their clear import; the only two decisions within the past 55 years that have considered *Solomon* did not distill from that opinion an exemption from the Virginia Workmen's Compensation Act for all nonresident employees and employers who are covered under the compensation laws of their own states. In light of our understanding of the limited applicability of the *Solomon* decision and the interpretations of that opinion by other courts, we are not persuaded that Virginia clearly and unequivocally exempts Maryland employers and employees from the provisions of its workmen's compensation laws to the extent required by § 21(c)(4) in order to exempt Virginia employees from the benefits of Maryland's Workmen's Compensation Act.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.